IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EMERSON OBED HERNANDEZ CULAJAY**, and **M.S.H.S.**, a minor child,<br><br>*Plaintiffs*,<br><br>v.<br><br>**KEVIN K. MCALEENAN**, Acting Secretary, United States Department of Homeland Security, et al.<br><br>*Defendants*. | Case No. 5:19-cv-03204-JDW |

# **OPINION**

A Guatemalan father and his six-year old daughter ask this Court for a preliminary injunction to prevent the Government from transferring them from a detention facility in Berks County, Pennsylvania, to Mexico pursuant to the Government's Migrant Protection Protocols ("MPP"), a policy in which the Government sends aliens who have crossed the United States-Mexico border back to Mexico during the pendency of their removal proceedings. Against this politically fraught backdrop, the Court must navigate several statutory provisions in which Congress has stripped district courts of subject matter jurisdiction to hear immigration-related claims. The Court must conduct this inquiry regardless of the parties' arguments, as part of its independent duty to ensure its subject matter jurisdiction. After conducting that inquiry, the Court concludes that it lacks subject matter jurisdiction to hear any of the claims on which Plaintiffs base their preliminary injunction motion. Accordingly, the Court will deny the motion and dismiss the claims over which it has determined it lacks subject matter jurisdiction.

## I. FACTUAL BACKGROUND

### A. MPP

In December 2018, the Department of Homeland Security ("DHS") announced MPP, which provides that certain aliens entering or seeking admission to the United States, who enter the United States by crossing through Mexico, may be returned to Mexico to await their immigration proceedings. Under MPP, the DHS issues to inadmissible aliens who cross into the United States from Mexico a Notice to Appear at a removal proceeding and then transfers them to Mexico to await their proceedings. (ECF No. 14-9.) The Government exempts a number of categories of aliens from MPP, including unaccompanied children, Mexican citizens, aliens processed for "expedited removal," and aliens who are more likely than not to face persecution or torture in Mexico. The Government requires aliens who are subject to removal to "affirmatively state[]" that they have a fear of torture or persecution in Mexico; it does not notify them of the fact that such a fear might stay their transfer. (*Id.* at 1-2.)

Aliens sent to Mexico under MPP are transferred to the custody of Mexican authorities at a point of entry. They then must return to that point of entry for their hearing, and DHS transports them to the hearing location. DHS's policy is to give aliens one hour prior to their removal proceedings to meet with counsel and prepare for those hearings. If an alien receives a final order of removal from an immigration judge, he or she is then processed in accordance with DHS's regulations.

### B. Plaintiffs' Removal Proceedings And Placement In MPP

Plaintiffs are a 31-year-old Guatemalan citizen and his six-year-old daughter. (ECF No. 14-1 ¶ 2.) Plaintiffs entered the United States without inspection on April 23, 2019 and turned themselves in to Customs and Border Protection ("CBP") Officers. (*Id.* ¶ 3.) On April 28, 2019,

each Plaintiff received a Notice to Appear, which required each of them to appear on June 25, 2019, in San Diego before an immigration judge. (ECF Nos. 14-2, 14-3.) The Notices to Appear indicate that the government placed Plaintiffs in "standard removal proceedings" under INA Section 240, 8 U.S.C. Section 1229. (*Id.*) Plaintiffs' Notices to Appear were stamped "MPP."

On April 29, 2019, CBP Officers took Plaintiffs to the San Ysidro border and turned them over to Mexican immigration authorities in Tijuana. (ECF No. 14-1 ¶ 8.) While in Mexico, Plaintiffs claim that they were not safe because there were no shelters and they had nowhere to go. (*Id.* ¶¶ 9-11.) However, a woman in Mexico gave them shelter for the next two months. (*Id.* ¶ 11.) During that time, Plaintiffs did not have access to medical care, and M.S.H.S. had no opportunity to go to school. (*Id.*)

On June 25, 2019, Plaintiffs presented at the San Ysidro Port of Entry and were transported to a removal hearing in San Diego. (*Id.* ¶ 13.) Plaintiffs participated in that hearing *pro se* and told the immigration judge that they had no fear of returning to Guatemala. (*Id.* ¶ 14.) Plaintiffs claim that Mr. Hernandez Culajay made that statement based on coaching he received from a CBP Officer, in order to avoid going back to Mexico. Plaintiffs also waived their appellate rights during that hearing. The immigration judge ordered Plaintiffs' removal, and the government then transferred Plaintiffs to the Berks County Residential Center in Leesport, Pennsylvania. (*Id.* ¶ 17.)

Once there, Plaintiffs retained counsel. After retaining counsel, Plaintiffs appealed to the Board of Immigration Appeals ("BIA"), alleging that the abandonment of their asylum claims was made under duress and therefore not knowing, intelligent, or voluntary. (*Id.* ¶¶ 18-19.) Filing the appeal triggered an automatic stay of Plaintiffs' removal pursuant to 8 CFR § 1003.6(a). In addition, Plaintiffs filed a motion asking the for an emergency stay of removal. (ECF No. 5-1.)

On July 23, 2019, the BIA granted their request and stayed the removal of Plaintiffs from the United States pending the outcome of their appeal before the BIA. (ECF No. 5.)

On August 9, 2019, a DHS asylum officer conducted an assessment of Plaintiffs' claims regarding their fear of return to Mexico as part of MPP. The asylum officer concluded that Plaintiffs did not establish a clear probability of torture or persecution on account of a protected ground or of torture in Mexico. (ECF No. 18-1.)

C. **Procedural History Of This Action**

The same day that the BIA issued its stay, Plaintiffs were sent from the Berks County facility to San Diego, so that they could be returned to Mexico to await the outcome of their appeal before the BIA. (ECF No. 14-1 ¶ 20.) That same day, Plaintiffs' counsel filed an Emergency Petition for Writ of Mandamus. (ECF No. 1.) The Petition includes six counts under the heading "Claims For Relief." In Count I, M.S.H.S. seeks to enforce rights that she claims pursuant to a consent decree entered in *Flores v. Sessions*, CV-85-4544-RJK(Px) (C.D.Cal.) (the "*Flores* Settlement"). In Count II, Plaintiffs allege violations of substantive and procedural due process. In Count III, Plaintiffs assert that DHS violates the Administrative Procedures Act, 5 U.S.C. § 500 *et seq.* (the "APA"), because it improperly classifies them (and others like them) as eligible for MPP because they are not from Mexico and because sending them to Mexico would violate the United States' obligations under domestic and international law. In Count IV, Plaintiffs contend that MPP is invalid under the APA because it should have been subject to notice and comment. In Count V, Plaintiffs contend that the adoption of MPP violates the APA because it is arbitrary and capricious, at least in part because it requires individuals designated for return to Mexico under MPP affirmatively to voice a fear of persecution in Mexico affirmatively, rather than notifying them that if they have such a fear, they might not be returned to Mexico.

In their Petition, Plaintiffs asked the Court for a Temporary Restraining Order to maintain the status quo by prohibiting Plaintiffs' removal to Mexico. The Court held a hearing on July 24, 2019. During that hearing, the Government committed to keep the Plaintiffs in the United States pending briefing and resolution of a motion for a preliminary injunction.

Plaintiffs filed a Memorandum in support of a Motion for a preliminary injunction on August 5, 2019. (ECF No. 14.) (As a technical matter, Plaintiffs have never filed a formal motion for a preliminary injunction. However, their Petition asks for all relief that is just and proper. In any event, the Court will construe the on-the-record proceedings at both the hearing on the application for the temporary restraining order and the hearing on the request for a preliminary injunction as an oral motion in open court for a preliminary injunction pursuant to Fed. R. Civ. P. 7.) In their Memorandum, Plaintiffs "advance four claims in support of their motion for a preliminary injunction," which is that the government's threat to send Plaintiffs to Mexico during the pendency of their appeal to the BIA:

- violates M.S.H.S.'s rights as a class member under *Flores*;
- violates the stay order that the BIA entered on July 23, 2019;
- violates their due process rights by interfering with an existing attorney-client relationship; and
- violates their statutory and constitutional rights because the Government is not authorized to apply MPP to arriving aliens such as Plaintiffs.

(ECF No. 14 at 12.) The Government filed a Brief in Opposition to Plaintiffs' Motions for Preliminary Injunctive Relief and Writ of Mandamus on August 14, 2019. (ECF No. 18.) The Court held a hearing on Plaintiffs' request for a preliminary injunction on August 16, 2019.

## II. LEGAL STANDARD

A plaintiff seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) that he will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. *See Lane v. New Jersey*, 725 Fed. App'x 185, 187 (3d Cir. 2018). The movant bears the burden of showing that these four factors weigh in favor of granting the injunction. *See Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990). Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances. *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

However, as a threshold matter, a plaintiff bears the burden of demonstrating this Court's subject-matter jurisdiction over his claims. *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009). The plaintiff must show this by a preponderance of the evidence. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006). A district court, however, has the obligation to raise questions of subject matter jurisdiction *sua sponte*. *See United States v. Cotton*, 535 U.S. 625, 630 (2002); *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002). If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action pursuant to FRCP 12(h)(3), as subject-matter jurisdiction can never be waived or forfeited. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

## III. ANALYSIS

### A. Plaintiffs' Claims Concerning The *Flores* Settlement

In Count I of the Petition, Plaintiff M.S.H.S. seeks to enforce rights that she claims to have under the *Flores* Settlement. The *Flores* Settlement establishes "the nationwide policy for the detention, release, and treatment of minors in the custody of INS[,]" including M.S.H.S. (ECF

No. 14-7 ¶ 9.) Plaintiffs ask this Court to enforce the *Flores* Settlement pursuant to Paragraph 24.B. of the settlement agreement, which provides, in relevant part:

> Any minor who disagrees with INS's determination to place that minor in a particular type of facility or who asserts that the licensed program in which he or she has been placed does not comply with the standards set forth in Exhibit 1 [of the Flores Settlement], may seek judicial review in any United States District Court with jurisdiction and venue over the matter to challenge that placement determination or to allege noncompliance with the standards set forth in Exhibit 1.

(*Id.* ¶ 24.B.) However, the Court concludes that it does not have subject matter jurisdiction to hear M.S.H.S.'s claims under the *Flores* Settlement.

Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They only possess power authorized by the Constitution or by statute. *See Willy v. Coastal Corp.*, 503 U.S. 131, 136–137 (1992). Moreover, to confer subject-matter jurisdiction in an action against the United States, "there must be statutory authority vesting a district court with subject matter jurisdiction." *Treasurer of New Jersey v. U.S. Dep't of Treasury*, 684 F.3d 382, 401–02 (3d Cir. 2012) (quoting *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1016 (9th Cir.2007)). Here, Plaintiffs have not pointed the Court to any statutory authority to hear the claims under the *Flores* Settlement, and the Court has not found any such authority.

As a starting point, the Court concludes that the *Flores* Settlement cannot, on its own, confer subject-matter jurisdiction on the Court. The *Flores* Settlement is a consent decree: a judicially-approved agreement between a private class and the executive branch of the United States. *Pope v. United States*, 323 U.S. 1, 12 (1944); *United States v. Swift & Co.*, 286 U.S. 106, 115 (1932). The parties to that case cannot create this Court's jurisdiction by stipulation. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *see also In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004) (subject matter jurisdiction cannot be

"conferred by consent" of the parties). In addition, the district court that approved the *Flores* Settlement and entered it as a consent decree lacks the power to expand this Court's power because this Court's power, as authorized by the Constitution or by statute, may not be expanded by judicial decree. *See Kokkonen*, 511 U.S. at 377.

Indeed, the *Flores* Settlement itself recognizes this limitation. Paragraph 24.B., upon which Plaintiffs base their argument, provides for review in "any United States District Court with **jurisdiction** and venue over the matter." (ECF No. 14-7 ¶ 24.B. (emphasis added).) The parties to the *Flores* Settlement did not define the word "jurisdiction." However, the Court concludes that the context of the settlement as a whole demonstrates that the word "jurisdiction" must mean "subject matter jurisdiction." If it did not mean "subject matter jurisdiction," then it would mean "personal jurisdiction," and because the United States is subject to personal jurisdiction everywhere in the country, an interpretation that treated the word "jurisdiction" to mean "personal jurisdiction" would essentially render the term a nullity, something that the Court must avoid if an alternative interpretation is available. *See Harris v. The Epoch Group, L.C.*, 357 F.3d 822, 825 (6th Cir. 2004) ("[U]nder federal common law 'a contract should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous.'") (quoting *Transitional Learning Community at Galveston, Inc. v. United States Office of Personnel Management*, 220 F.3d 427, 431 (5th Cir. 2001)).

Moreover, the *Flores* Settlement's use of the word "jurisdiction" must mean an independent, statutory basis for subject matter jurisdiction. If the term meant "jurisdiction" and the settlement agreement could vest a court with jurisdiction, then the term would lose all meaning because any court in which a case was brought would have jurisdiction by virtue of the case having been brought. That cannot be what the parties meant. Instead, the *Flores* Settlement must have

8

meant what the law requires independent of the settlement agreement: the Court must have an independent, statutory or constitutional, basis to assert subject matter jurisdiction over claims arising under the settlement agreement.

The Court does not have such jurisdiction here. At the preliminary injunction hearing, Plaintiffs asserted that the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to hear claims about the *Flores* Settlement. Section 1331 grants this Court with original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. To invoke federal question jurisdiction, a plaintiff's right to sue must be founded directly upon a federal law. *Donofry v. Nazareth Hosp.*, 721 F. Supp. 732, 734 (E.D. Pa. 1989) (*citing Gully v. First National Bank*, 299 U.S. 109 (1936)).

The *Flores* Settlement is not a "law[] … of the United States." Congress did not enact it. The executive branch did not promulgate it pursuant to a statutory delegation from Congress. Instead, it is a judicial decree reflecting an agreement between the executive branch and private litigants. *See Boutwell v. Walker*, No. 2:13CV170-MHT, 2013 WL 1331670, at *5 (M.D. Ala. Apr. 2, 2013), report and recommendation adopted, WL 1774623 (M.D. Ala. Apr. 25, 2013) (plaintiff's allegation that defendants had violated the court's consent order was not "a cause of action founded on federal constitutional or statutory law"). Moreover, *Flores* does not determine federal law. Indeed, in *Flores*, there was no final determination of the claims. It is therefore possible that the commitments that the executive branch made in the *Flores* Settlement exceed the minimum conduct that the Constitution requires. That potential daylight poses the problem here. While the Court might have federal question jurisdiction to determine the constitutional grievances that were at issue in *Flores*, it has no such jurisdiction to enforce commitments above and beyond constitutional minimums. When M.S.H.S., or any other plaintiff, asks the Court to enforce the

*Flores* Settlement, however, she asks the Court to enforce commitments that emanate not from the Constitution but from a contract and court order. The Court has no authority to do so.

Moreover, as a general rule, courts do not have the authority to enforce other courts' injunctions. *See Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012). Indeed, the court that issued an injunctive order "alone possesses the power to enforce compliance with and punish contempt of that order." *Id.* (citing *In re Debs*, 158 U.S. 564, 595 (1895)). In *Alderwoods*, the Eleventh Circuit expressed concern that it "would wreak havoc on the federal courts to leave enforcement of the injunctive order of a bankruptcy court in one district to the interpretive whims of a bankruptcy court in another district." *Id.* So too here. Leaving the enforcement of the Central District of California's consent decree to the interpretive whims of this Court and other courts around the country, particularly when Congress has not granted subject matter jurisdiction, would wreak havoc on the federal judicial system and give plaintiffs who want to enforce the *Flores* Settlement an opportunity to forum-shop.

In their brief and at the preliminary injunction hearing, Plaintiffs pointed the Court to the holding in *W.S.R. v. Sessions*, 318 F. Supp.3d 1116 (N.D.Ill. 2018). There, the court concluded that "subject-matter jurisdiction poses no obstacle to considering [a plaintiff's] claim under the Flores Agreement" because "no one questions the … subject matter jurisdiction … of the District Court overseeing the consent decree to decide claims under it," and "[s]ubject matter jurisdiction does not vary from federal District Court to District Court." *Id.* at 1128-29. This Court disagrees, for two reasons. First, the district court in *Flores* has jurisdiction to hear claims that arise under the *Flores* Settlement because it has the inherent power to enforce its own orders. No other court does. In that sense, jurisdiction does vary from district court to district court. Second, as noted above, Paragraph 24.B. of the *Flores* Settlement requires a district court to have "jurisdiction"

10

before it can consider a claim about the parties' rights under the *Flores* Settlement. That requirement demands more than the simple conclusion that district courts' subject matter jurisdiction is the same. Indeed, such a reading would give the word "jurisdiction" in Paragraph 24.B. no meaning at all.

### B. Plaintiffs' Due Process Claims

Plaintiffs contend in Count II of their Petition that the Government's plan to send them to Mexico pursuant to MPP would interfere with their established relationship with counsel and would therefore violate their Fifth Amendment rights to due process. Plaintiffs' right to counsel is a creation of statute. In particular, 8 U.S.C. § 1362 provides that in

> any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented … by such counsel … as he shall choose.

Plaintiffs argue that, if they are sent to Mexico, their relationship with their current counsel might suffer a disruption, if not a total fracture.

The Court does not have jurisdiction to hear this claim, however. The INA makes clear that a "petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). The statute also provides: "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien . . . shall be available only in judicial review of a final order[.]" 8 U.S.C. § 1252(b)(9). The Supreme Court has described this provision as an "unmistakable 'zipper' clause" that "channels judicial review of *all*" decisions and actions arising from removal proceedings. *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999); *see also Guy v. Reno*, Civ. A. No. 99-3589, 1999 WL 718554, at * 4 (E.D.Pa. Sept. 2, 1999). That means "any issue—whether legal or factual—arising from any removal-related

11

activity can be reviewed only through the [petition-for-review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). Thus, the pertinent question before the Court is whether Plaintiffs' deprivation-of-counsel claim "arises from" any action or proceeding to remove them, thereby depriving this Court of jurisdiction.

Here, Plaintiffs' due process claims arise from their removal proceedings. The statutory right on which Plaintiffs rest their claims provide them with a right to counsel in removal proceedings. Moreover, at the preliminary injunction hearing, Plaintiffs explained that the harm that they will suffer will be harm to the fairness of their removal proceedings. Because the harm about which Plaintiffs complain is harm to the removal proceedings, their claims arise from their removal proceedings, and this Court lacks jurisdiction under Section 1252(b)(9).

The Court is mindful of Justice Alito's caution in *Jennings v. Rodriguez*, 138 S. Ct. 830, 840 (2018), that courts should avoid "uncritical literalism" in interpreting the phrase "arising from" in Section 1252(b)(9). In *Jennings*, however, the Supreme Court was considering a question of prolonged detention—a claim that was related to, but did not arise directly from, the removal proceedings. Moreover, the types of claims that Justice Alito used to illustrate claims that do not arise from a removal proceeding are all claims that would exist independently from a removal proceeding, such as a claim based on inhumane conditions of confinement, or a personal injury case that accrues from an accident involving a prison transport bus that carries aliens in custody.

Here, by contrast, the claims relate specifically to the underlying removal proceeding and therefore arise from that proceeding within the meaning of Section 1259(b)(9). In that regard, this Court agrees with the Northern District of California's opinion in *Alvarez v. Sessions* that the Court "need not employ an expansive interpretation of § 1252(b)(9)'s 'arising from' language to find that right-to-counsel claims, like those of Petitioners, fall squarely within the purview of the

provision." *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1049 (N.D. Cal. 2018). Indeed, the statutory right to counsel is specific to removal proceedings. *See* 8 U.S.C. § 1362.

C. **Plaintiffs' Claims Concerning Their Eligibility For MPP**

Plaintiffs claim in Count III of their Petition that because they were eligible for expedited removal proceedings, they should not have been eligible for MPP. The INA provides that if an immigration officer determines that an alien is inadmissible for entry into the United States, then the officer "shall order the alien removed from the United States without further hearing or review …." 8 U.S.C. § 1225(b)(1)(A)(i). Proceedings under this provision are called "expedited." The statute also provides that if an immigration officer determines that an alien is not "clearly and beyond a doubt entitled to be admitted, then the alien shall be detained for" a removal proceeding before an immigration judge. 8 U.S.C. § 1225(b)(2)(A). Proceedings under this provision are called "regular."

As the Ninth Circuit recently noted, there is overlap between the aliens who fall within these two statutory provisions. *See Innovation Law Lab v. McAleenan*, 924 F.3d 503, 508 (9th Cir. 2019). The classification matters because the statutory basis for MPP is 8 U.S.C. § 1225(b)(2)(C), which provides, "In the case of an alien described in subparagraph (A) who is arriving on land … from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending" a removal proceeding before an immigration judge. Thus, only an alien described in Section 1225(b)(2)(A) can be eligible for MPP. Plaintiffs say that they are not eligible because Section 1225(b)(2)(B) provides that anyone eligible for expedited consideration under Section 1225(b)(1) is not eligible for regular removal proceedings under Section 1225(b)(2)(A).

The Court does not have jurisdiction to hear this claim because Section 1252(b)(9) takes away any such jurisdiction. Section 1252(b)(9) applies to any claim "arising from any action taken

13

or proceeding brought to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). Notably, the use of the word "or" in the phrase "action taken or proceeding brought" means that there must be some difference between an "action taken" to remove an alien and a "proceeding brought" to remove an alien. *See Loughrin v. U.S.*, 573 U.S. 351, 357 (2014) (use of the word "or" in a statute is almost always disjunctive, meaning the words it connects "are to be given separate meanings"). The immigration officer's decision to place Plaintiffs in line for regular proceedings, rather than expedited proceedings, is not necessarily a "proceeding brought" within the meaning of the statute because the classification decision appears to precede the removal proceedings, rather than being part of those proceedings. However, the classification decision is an "action taken … to remove an alien." Indeed, the only reason for an immigration officer to make the decision is to determine what type of removal proceedings will ultimately apply to the alien in question. Because it is an "action taken," it is within the scope of Section 1252(b)(9), and this Court lacks jurisdiction to hear the claim. Plaintiffs' remedy is before the immigration court and then in a petition for review in a court of appeals.

In its brief, the Government argues that 8 U.S.C § 1252(g) strips this Court of jurisdiction to hear this claim. Section 1252(g) strips from this Court jurisdiction "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Secretary] to commence proceedings ... against any alien under this chapter" 8 U.S.C. § 1252(g). However, during the hearing on the preliminary injunction, the Government conceded that the immigration officer's classification decision under Section 1225(b)(2)(A) likely preceded the commencement of removal proceedings, which is instead triggered by issuance of a "Notice To Appear." Ultimately, however, the Court need not resolve this question in light of its conclusion that Section 1252(b)(9) strips this Court of jurisdiction.

### D. Plaintiffs' Claims Concerning Non-Refoulement Obligations

Plaintiffs contend in Count V of the Petition, that, as applied to them, the MPP is arbitrary and capricious for two reasons: 1) rather than ask Plaintiffs whether they have a fear of persecution or torture in Mexico, the Government put the onus on Plaintiffs to raise such a fear on their own; and 2) the Government's process for assessing claims of fear of persecution or torture, including the standard to evaluate such claims, violates the Government's non-discretionary non-refoulement obligations under the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). (ECF No. 14 at 21, 23.) The Court lacks jurisdiction over the first prong of Plaintiffs' claim because that claim has been rendered moot, and the Court lacks jurisdiction over the second prong of Plaintiffs' claim by operation of a jurisdiction-stripping statute in the INA. Thus, the Court is without power to assess either aspect of Plaintiffs' claim regarding non-refoulement.

"Article III of the Constitution limits the federal judiciary's authority to exercise its 'judicial Power' to resolving 'Cases' and 'Controversies.'" *Hamilton v. Bromley*, 862 F.3d 329, 334 (3d Cir. 2017) (citation omitted). "Mootness" is one of the several "justiciability doctrines that cluster about Article III[.]" *Id.* at 334–35 (quotation omitted). A case becomes moot when "developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief." *Id.* (same). When a case is moot, there is no live controversy, and the case is not justiciable.

Plaintiffs contend that the Government's application of MPP was arbitrary and capricious as applied to them because the Government did not assume a "positive obligation" to ensure that Plaintiffs would be safe if returned to Mexico pending their removal proceedings. (ECF No. 14 at 23.) Rather than ask Plaintiffs if they feared persecution or torture in Mexico, the Government put

15

the burden on Plaintiffs to raise this fear without prompting. (*Id.*) As Plaintiffs' counsel acknowledged during the hearing on their Motion for a Preliminary Injunction, this aspect of their claim became moot once the DHS asylum officer conducted an assessment interview with Plaintiffs on August 9, 2019.

Likewise, the Court is without jurisdiction to consider Plaintiffs' claim that the Government's processes for evaluating their fears of persecution or torture in Mexico violate the Government's non-refoulement obligations imposed by CAT. (ECF No. 14 at 21.) As an initial matter, the Court disagrees with the Government's contention that § 1252(a)(2)(B)(ii) strips the Court of jurisdiction over this claim because the decision to send Plaintiffs to Mexico under MPP is discretionary. (ECF No. 18 at 10-11.) On the contrary, the CAT makes clear that "[n]o State Party **shall** expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." CAT, art. 3 (Dec. 10, 1984) (emphasis added). The use of the word "shall" indicates the mandatory nature of the Government's non-refoulement obligations. *See United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 246 (3d Cir. 2016) (characterizing statutory language using the word "shall" as "non-discretionary"). Thus, the Government's refoulement decision is not a discretionary one, and Section 1252(a)(2)(B)(ii) does not insulate it from review.

While that is the only statute that the Government invokes, it is not the only relevant jurisdiction-stripping provision in Section 1252. Section 1252(a)(4) provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be **the sole and exclusive means for judicial review** of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment[.]

8 U.S.C. § 1252(a)(4) (emphasis added). As the plain language of this statute makes clear, this Court cannot hear Plaintiffs' claims to the extent they arise under the CAT. At argument, Plaintiffs

confirmed that, other than the notice claim referenced above, the CAT supplies the legal basis for all of their other non-refoulement claims. Section 1252(a)(4) deprives this Court of jurisdiction over those claims.

### E. Plaintiffs' Claims Concerning The Board's Stay Order

In Count VI of their Petition, Plaintiffs seek a writ of mandamus to enforce the BIA's order staying their removal. During the hearing on Plaintiffs' Motion for a Preliminary Injunction, Plaintiffs' counsel acknowledged that the BIA's order is unclear as to its scope. Plaintiffs' counsel also agreed that Plaintiffs will withdraw their mandamus claims concerning the Board's stay order and seek clarification and/or enforcement before the Board. Because Plaintiffs have agreed on the record to withdraw this claim, it is moot, and the Court need not determine whether it has jurisdiction or whether Plaintiff have a likelihood of success on the merits.

## IV. CONCLUSION

The Court's holding today means that Plaintiffs cannot pursue their claims in this Court. However, they are not without a forum—or fora—in which to pursue relief. M.S.H.S. can return to the Central District of California to seek to enforce her rights under the *Flores* Settlement. Plaintiffs can present to the BIA and the Court of Appeals any claim that transfer to Mexico under MPP undermines their due process rights in their underlying removal proceedings. They can also present any claims that arise under the CAT to the Court of Appeals. In addition, they can return to the BIA in an attempt to clarify and enforce the BIA's stay order. However, Plaintiffs cannot pursue their claims here because Congress has not given this Court subject matter jurisdiction. Accordingly, the Court will deny Plaintiffs' Motion for a Preliminary Injunction.

The Court will also dismiss the claims over which it lacks subject matter jurisdiction. However, because there appear to be some claims asserted in the Petition that were not the subject

of the preliminary injunction motion, the Court will not dismiss the entire case. The Parties are directed to discuss whether Plaintiffs intend to proceed on any remaining claims and, if so, to advise the Court. An appropriate Order follows.

*/s/ Joshua D. Wolson*
Hon. Joshua D. Wolson
United States District Judge